**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AFRICARD CO. LTD.,

                 Petitioner-Judgment Creditor,

        -against-

THE REPUBLIC OF NIGER,

                Respondent-Judgment Debtor.

Case No. 1:16-mc-00370-P1

---

**DECLARATION OF MARK D. BECKETT IN SUPPORT OF AFRICARD CO., LTD.'S**
**MOTION BROUGHT BY AN ORDER TO SHOW CAUSE FOR**
**PERMISSION TO SERVE A RESTRAINING ORDER**

I, Mark D. Beckett, declare as follows:

1. I am a partner at the law firm of Chadbourne & Parke LLP, counsel to Petitioner/Judgment Creditor Africard Co. Ltd. ("Africard").

2. I am fully familiar with the facts set forth herein.

3. Africard is a company incorporated in the British Virgin Islands with a registered office located at Geneva Place, Road Town, Tortola.

4. I submit this Declaration in further support of Africard's Motion Brought by an Order to Show Cause for Permission to Serve a Restraining Order (the "Motion"), which seeks (1) permission to serve a restraining notice on Citigroup, Inc. and Citibank, N.A. ("Citigroup"); and (2) a temporary restraining order (i) immediately restraining (a) Citibank, (b) Judgment Debtor Republic of Niger ("Niger"), (c) the Société de Patrimoine des Mines du Niger ("SOPAMIN"), Niger's state owned mining company, and (d) any other person or entity with notice of the order from making or permitting the transfer of funds or any other assets deposited, or controlled, or for the benefit of, SOPAMIN and/or

Niger, in the possession of Citibank, until Africard's motion for a restraining notice is adjudicated by the Court, and (ii) directing Niger to appear to show cause why a restraining notice should not issue.

5. Simultaneously with its request for a temporary restraining order, Africard is seeking an order to serve a restraining notice pursuant to N.Y.C.P.L.R.§ 5222(b) on Citibank, whose corporate headquarters is in the State of New York, in the Southern District of New York, in order to restrain funds held there by SOPAMIN and/or by Niger.

6. To the best of my knowledge, information, and belief, SOPAMIN has an account at Citibank held in connection with its business dealings in the United States, including, but not limited to, those with Exelon Corporation and Exelon Generation Company, LLC (collectively "Exelon").

7. We respectfully submit that the Court should issue the temporary restraining order for the following reasons, as well as the reasons set forth in Africard's accompanying memorandum of law.

8. On October 13, 2011, Petitioner entered into a concession agreement with the Republic of Niger to produce biometric and electronic passports (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit C. A certified translation of the Agreement is attached hereto as Exhibit D.

9. On March 24, 2011, Niger unilaterally breached and cancelled the Agreement. In light of the cancelation, after failing to come to an amicable settlement with the Republic of Niger, Petitioner elected, per Article 25 of the Agreement, to refer to the dispute to arbitration under the rules of l'Organisation pour l'Harmonisation en Afrique du Droit des Affaires' ("OHADA") in Abidjan, Côte d'Ivoire.

10. On June 9, 2014, an arbitral tribunal constituted pursuant to the OHADA rules, and seated in Abidjan, Côte d'Ivoire, rendered an Interim Procedural Award.  A true and correct copy of the Interim Procedural Award is attached hereto as Exhibit E.  A certified translation of the Interim Procedural Award is attached hereto as Exhibit F.

11. On December 6, 2014, the Tribunal issued the Final Award and awarded the Petitioner the following:

    - 44,740,781 West African CFA Francs as compensation for costs incurred with 13% interest (the annual interest rate of the Central Bank of West African States) accruing from April 15, 2013;
    - 15,440,533,316 West African CFA Francs as compensation for lost profits, with 13% interest accruing from April 15, 2013;
    - 1,000,000,000 West African CFA Francs for reputational harms incurred, with 13% interest accruing from the date of the issuance of the Final Award, December 6, 2014; and
    - 156,747,299 West African CFA Francs for the cost of the arbitral proceedings.

    A true and correct copy of the Final Award is attached hereto as Exhibit G.  A certified translation of the Final Award is attached hereto as Exhibit H.

12. On February 4, 2016, Africard filed a Petition to confirm the Final Award in the United States District Court for the District of Columbia (the "DC District Court").  Africard requested that the Clerk of the Court serve a copy of the Summons, Notice of Suit, and Petition, together with all exhibits and translations in the official language of Niger (French), on the head of the Ministry of Foreign Affairs of Niger, as required by the Foreign Sovereign Immunities Act ("FSIA") found in 8 U.S.C. § 1608(a)(3).   On February 12, 2016, Niger was served by the Clerk of the Court in accordance with these FSIA service requirements.

13. Despite receiving numerous notifications regarding Africard's attempts to confirm the award in the DC District Court, Niger failed to file any responsive pleading or even enter

an appearance in the matter.  As a result, Africard moved for default judgment on May 13, 2016.  Over a period of more than four months, Africard submitted two status reports to the DC District Court to keep the court apprised of developments, one in response to a minute order by the court.

14.  On September 27, 2016, the court entered a default judgment, confirming the arbitration award and entering judgment in favor of Africard in the amount of $46,128,410.46.

15. On September 30, 2016, the Clerk of the DC District Court filed a certificate of mailing evidencing that the judgment and a translation of the judgment in French was sent, at Africard's request, to the head of the Ministry of Foreign Affairs of Niger.  A true and correct copy of the certificate of mailing is attached hereto as Exhibit I.

16. On October 5, 2016, Niger was served with a copy and French translation of the default judgment.  A true and correct copy of the October 5, 2016 signed receipt confirmations are attached hereto as Exhibit J.

17. On October 17, 2016, the Clerk of the DC District Court certified the judgment to be registered in another district.  Following the certification, on October 18, 2016, Africard registered the judgment in the United States District Court of the Southern District of New York.

18. In light of Niger's persistent refusal to participate in the United States judicial process in this matter, and the ease with which funds may be moved, Africard runs the substantial risk that Niger may seek to preempt any restraining order by removing the assets located at Citibank to outside the jurisdiction of this Court. Accordingly, Africard faces a substantial risk of immediate and irreparable harm if the temporary restraining order is not issued pending a hearing on Africard's motion, since it will give Niger and/or

SOPAMIN the opportunity to move the assets located in the Citibank accounts to outside the jurisdiction of the Court.

19. As a result, if Citibank, Niger, SOPAMIN, or any other person or entity with notice of the order, are not barred from making or permitting the transfer of funds or any other assets deposited, controlled, or being held for the benefit of, SOPAMIN and/or Niger, that are in the possession or control of Citibank, then Africard may be unable to obtain any meaningful remedy to satisfy the judgment rendered by the DC District Court.

20. Given the significant threat of immediate and irreparable harm, Africard has not provided notice to Niger, SOPAMIN, or Citibank.  Such notice, especially with respect to Niger and SOPAMIN, who have not appeared in Africard's United States proceedings, could give sufficient opportunity to Niger and/or SOPAMIN to remove the assets under the control of Citibank from the jurisdiction of this Court and therefore render fruitless any further prosecution of this judgment.

21. Upon information and belief, the accounts at Citibank are used by SOPAMIN in connection with transactions in which it sells Exelon uranium concentrates.  Attached as Exhibit K is a true and correct copy of the contract between Exelon and SOPAMIN with amendments.

22. Upon information and belief, Compagnie Minière Et Énergétique Du Niger (CMEN), a 1% shareholder in SOPAMIN, is owned 38.45% by Niger and 32.65% by SOPAMIN.

23. Upon information and belief, Société Nigérienne du Charbon d'Anou-araren (SONICHAR), a 1% shareholder in SOPAMIN, is 69.3% owned by Niger.

24. Attached as Exhibit L is a true and correct copy of the Declaration of Hamma Hamadou.

25. Attached as Exhibit M is a true and correct copy of SOPAMIN's website.

26. Attached as Exhibit N is a true and correct copy of International Monetary Fund, Niger: Letter of Intent, Memorandum of Economics and Financial Policies, and Technical Memorandum of Understanding (February 28, 2012).

27. Attached as Exhibit O is a true and correct copy of an invoice from SOPAMIN to Exelon Generation, dated November 13, 2007.

28. Attached as Exhibit P is a true and correct copy of Ordinance 2007-003 of the Republic of Niger.

29. Attached as Exhibit Q is a translation of Ordinance 2007-003 of the Republic of Niger.

30. Attached as Exhibit R is a true and correct copy of Ordinance 2010-011 of the Republic of Niger.

31. Attached as Exhibit S is a certified translation of Ordinance 2010-011 of the Republic of Niger.

32. Attached as Exhibit T is a true and correct copy of the SOPAMIN Board Meeting Minutes of March 7, 2014.

33. Attached as Exhibit U is a certified translation of the SOPAMIN Board Meeting Minutes of March 7, 2014.

34. Attached as Exhibit V is a true and correct copy of the Areva-Niger Strategic Partnership Agreement.

35. Attached as Exhibit W is a certified translation of the Areva-Niger Strategic Partnership Agreement.

36. Attached as Exhibit X is a true and correct copy of the BNP Paribas SOPAMIN withdrawal order.

37. Attached as Exhibit Y is a certified translation of the BNP Paribas SOPAMIN withdrawal order.

38. Attached as Exhibit Z is a true and correct copy of the Areva website describing share ownership of Société des Mines de l'Aïr ("SOMAIR").

39. Attached as Exhibit AA is a true and correct copy of the Areva website describing share ownership of Compagnie Minière d'Akouta ("COMINAK").

40. Attached as Exhibit BB is a true and correct copy of the 2010 Budget of the State of Niger.

41. Attached as Exhibit CC is a certified translation of an excerpt of the 2010 Budget of the State of Niger.

42. Attached as Exhibit DD is a true and correct copy of a letter of September 2014 which, upon information and belief, is signed by the Honorable Minister Massoudou Hassoumi.

43. Attached as Exhibit EE is a certified translation of a letter of September 2014 which, upon information and belief, is signed by Honorable Minister Massoudou Hassoumi.

44. Attached as Exhibit FF is a true and correct copy of a Cablegate article of July 7, 2009.

45. Attached as Exhibit GG is a true and correct copy of SOPAMIN's organic document.

46. Attached as Exhibit HH is a translation of SOPAMIN's organic document.

47. Attached as Exhibit A is a true and correct copy of the June 23, 2015 letter from SOPAMIN.

48. Attached as Exhibit B is a certified translation of the June 23, 2015 letter from SOPAMIN.

49. Attached as Exhibit II is a true and correct copy of the Observatory of Economic Complexity's website page on Niger.

50. Attached as Exhibit JJ is a true and correct copy of the Encyclopedia Universalis definition of "Tutelle Administrative."

51. Attached as Exhibit KK is a certified translation of the Encyclopedia Universalis definition of "Tutelle Administrative."

52. No prior application for similar relief has been made.

I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.


Dated: New York, New York
      October 20, 2016

                                        Mark D. Beckett