UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AFRICARD CO. LTD.,

                 Petitioner-Judgment Creditor,

        -against-

THE REPUBLIC OF NIGER,

                 Respondent-Judgment Debtor.

Case No. 1:16-mc-00370-P1

## AFRICARD CO. LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER FOR ATTACHMENT AND EXECUTION OF JUDGMENT

CHADBOURNE & PARKE LLP
*Attorneys for Petitioner-Judgment Creditor*
1301 Avenue of the Americas
New York, NY 10019-6022
(212) 408-5100 (telephone)
(212) 541-5369 (facsimile)

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND & PROCEDURAL HISTORY.......................................2

    A.    The Concession Agreement .............................................................2

    B.    The Final Award ...............................................................................3

    C.    The July 2016 D.D.C. Order of Judgment.........................................3

    D.    This Court's October 20, 2016 Temporary Restraining Order...........5

    E.    Niger's Ownership of Commercial Real Estate in New York..............6

ARGUMENT ................................................................................................................7

  I.    Jurisdiction and Venue are Proper .......................................................8

  II.  An Order Authorizing Attachment and Execution as to Niger's Property and Related Proceeds Should be Granted ......................................................................9

    A.    Niger Was Properly Served with Notice of the D.C. Judgment ...........9

    B.    A Reasonable Period of Time Has Passed Between Service of Judgment and the Present Motion .........................................................................9

    C.    Niger Waived the "Reasonable Time" Requirement under the FSIA ...10

    D.    The Property Is Commercial Property and Is Not Immune from Attachment or Execution .................................................................11

        1.    The Property Is Used for Commercial Activity.........................11

        2.    Additional Circumstances under § 1610(a) Are Present ...........13

            a.    Niger Waived Immunity From Attachment....................13

            b.    The Execution or Attachment Would Satisfy an Arbitral Award..14

  III.  The Court Should Issue a Temporary Restraining Order and Preliminary Injunction to Preserve the Status Quo of the Property .........................................................15

    A.    Africard is Likely to Succeed on the Merits of Its Motion ...................15

    B.    Africard Will Suffer Irreparable Harm if the Property Is Encumbered or Sold ....16

    C.    The Balance of Equities Favors Issuing Injunctive Relief ...................17

    D.    Granting Injunctive Relief Promotes the Public Interest .......................18

    E.    Security .............................................................................................18

CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Africard Co. v. Republic of Niger,*
2016 WL 5396666 (D.D.C. Sept. 27, 2016) ................................................................*passim*

*Baker v. Socialist People's Libyan Arab Jamahirya,*
810 F. Supp. 2d 90 (D.D.C. 2011) ...............................................................................9

*Board of Managers of OTIC Professional Condominium v. Democratic Republic*
*of Somalia,*
2009 U.S. Dist. LEXIS 68333 (S.D.N.Y. July 20, 2009) ...........................................12

*Dama S.P.A. v. Does,*
2015 WL 10846737 (S.D.N.Y. June 15, 2015) ......................................................15, 17

*Energy Capital Co. v. Caribbean Trading and Fidelity Corp.,*
1994 U.S. Dist. Lexis 15494 (S.D.N.Y. Oct. 28, 1994) .............................................17

*In re Feit & Drexler, Inc.,*
760 F.2d 406 (2d Cir. 1985) ......................................................................................16

*Firemen's Ins. Co. v. Keating,*
753 F. Supp. 1146 (S.D.N.Y 1990) ............................................................................17

*Ford Motor Co. v. Russian Fed'n,*
2010 WL 2010867 (S.D.N.Y. May 18, 2010) ........................................................12, 13

*Gadsby & Hannah v. Socialist Republic of Romania,*
698 F. Supp. 483 (S.D.N.Y. 1988) .............................................................................10

*Joseph v. Office of Consulate Gen. of Nigeria,*
830 F.2d 1018 (9th Cir. 1987) ...................................................................................12

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi*
*Negara,*
2002 WL 32107929 (S.D. Tex. Jan. 25, 2002) ............................................................9

*Libra Bank Ltd. v. Banco Nacional de Costa Rica, S. A.,*
676 F.2d 47 (2d Cir. 1982) ...................................................................................13, 14

*RCA Corp. v. Tucker,*
696 F. Supp. 845 (E.D.N.Y. 1988) ..............................................................................8

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992)..................................................................................................11, 12

*Smith v. Fed. Reserve Bank of N.Y.*,
  280 F. Supp. 2d 314 (S.D.N.Y. 2003), *aff'd*, 75 F. App'x 860 (2d Cir. 2003)........................16

*Estate of Smith v. Fed. Reserve Bank of N.Y.*,
  346 F.3d 264 (2d Cir. 2003) ..................................................................................16

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995) ....................................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)................................................................................................15

**Statutes**

28 U.S.C. § 1330(a) ..............................................................................................8

28 U.S.C. § 1391(b)(2) ..........................................................................................9

28 U.S.C. § 1603(d) ........................................................................................11, 12

28 U.S.C. § 1608(a)(3) and (e) ..............................................................................9

28 U.S.C. § 1610, *et seq.* ................................................................................*passim*

C.P.L.R. § 302(a) and (a)(4) ..................................................................................8

**Other Authorities**

N.Y.C.P.L.R. § 5230..........................................................................................1, 7, 19

Federal Rule of Civil Procedure 65 ....................................................................14, 18

Federal Rule of Civil Procedure 69 ..............................................................1, 2, 7, 8, 18

Petitioner-Judgment Creditor Africard Co. Ltd. submits this Memorandum of Law in support of its motion for an order to show cause for (1) a temporary restraining order preventing Respondent-Judgment Debtor Republic of Niger ("Niger") from taking certain actions with regard to a piece of real property it owns, 5 East 80th St., in the City, County, and State of New York (the "Property"); (2) a preliminary injunction preventing such actions with regard to the Property; and (3) an order pursuant to 28 U.S.C. § 1610(a) and (c), Rule 69 of the Federal Rules of Civil Procedure ("F.R.C.P."), and Section 5230 of the New York Civil Practice Law and Rules ("N.Y. C.P.L.R"), providing for the attachment and execution, for the benefit of Africard, of the Property and Niger's moneys associated with the Property.

## PRELIMINARY STATEMENT

Niger owes Africard $42,442,970.46, plus post-judgment interest, based on an unsatisfied judgment rendered by the United States District Court for the District of Columbia on September 27, 2016 (the "D.C. Judgment") and registered before this Court on October 18, 2016. ECF No. 1. That judgment confirmed an arbitration award issued on December 6, 2014 (the "Arbitration Award"). *Africard Co. v. Republic of Niger*, No. CV 16-00196 (ABJ), 2016 WL 5396666, at *1 (D.D.C. Sept. 27, 2016); McCormack Decl., Ex. P. Niger failed to pay Africard the amount owed it under the D.C. Judgment.

Africard has recently discovered that Niger owns a significant asset in New York City: a multi-story mansion on the Upper East Side of Manhattan. The Property is used in commercial activity – rented out to a private tenant – and accordingly is not shielded by sovereign immunity from attachment or execution under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1610(a). If Niger were a judgment debtor in a conventional commercial case, Africard would seek to execute the judgment without court intervention. Because Niger is a sovereign, however,

1

falling under the FSIA, Africard now seeks an order to show cause from the Court as to three forms of relief, as set forth in the accompanying proposed order to show cause, pursuant to the FSIA and other applicable law.

First, Africard's order to show cause seeks injunctive relief restraining Niger from conduct that may jeopardize Africard's ability to execute on the property. Niger has a long history of ignoring court proceedings and court orders, related both to the judgment at issue and other litigation. The Property is the only known asset of Niger in the United States that has a substantial value known to Africard and that is subject to seizure. In such circumstances, there is a great risk that during the pendency of any motion by Africard – or even upon mere communication from Africard to Niger concerning the Property – Niger will take immediate action to liquidate, encumber, change the status or otherwise harm the Property in an attempt to shield its assets from execution and to prevent Africard from obtaining relief. Africard thus seeks an Order to Show Cause as to both a temporary restraining order and a preliminary injunction, as detailed on the attached order, preventing Niger or its agents or assigns from taking certain actions with regard to the Property until such time as the court adjudicates the non-injunctive portions of Africard's motion for an order to show cause.

Second, Africard's application seeks an order providing for the attachment and execution of the Property and of revenue streams associated with that property, pursuant to 28 U.S.C. § 1610(a) and (c), F.R.C.P. Rule 69, and N.Y. C.P.L.R. § 5230.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.  The Concession Agreement

In or around 2011, Niger sought to retain a contractor to mass-produce biometric and electronic passports for its citizens. On October 13, 2011 Africard and Niger entered into a Concession Agreement for the mass production of such passports. McCormack Decl., Ex. D.

The Concession Agreement contains an arbitration clause which provides that, "[f]ailing an amicable settlement, any dispute shall be submitted by one of the parties for arbitration by the OHADA Common Court of Justice and Arbitration," commonly known as the "CCJA."[1] *Id.* at 16.

On March 24, 2013, Niger unilaterally terminated the Concession Agreement, and a dispute between Africard and Niger concerning the Concession Agreement followed. McCormack Decl., Ex. A at 12. On April 8, 2013, after the parties failed to amicably resolve their dispute, Africard submitted the dispute to arbitration before a panel of the CCJA in Abidjan, Côte d'Ivoire, as provided for in the Concession Agreement. *Id.*

## B.    The Final Award

Niger contested Africard's arbitration demand before the CCJA, submitting briefs and evidence and appearing in an evidentiary hearing before a CCJA tribunal on January 16, 2014. McCormack Decl., Ex. A at 14. On June 9, 2014, the CCJA issued a 33-page opinion finding Niger liable and declaring that "the unilateral termination [of the agreement] by the Republic of Niger is abusive and wrongful." McCormack Decl., Ex. A at 32. On December 6, 2014, the tribunal issued a Final Award, awarding Africard a total of 16.64 billion West African CFA francs for Niger's wrongful termination of the Concession Agreement. *See* McCormack Decl., Ex. B ¶ 64.

## C.    The July 2016 D.D.C. Order of Judgment

On February 4, 2016, Africard filed a petition to confirm the CCJA's arbitration award in the United States District Court for the District of Columbia, appearing before the Honorable

---

[1] OHADA, the Organisation pour l'Harmonisation en Afrique du Droit des Affaires, is a treaty organization based in Abidjan, Côte d'Ivoire. It provides a system of laws, regulations, and implementing institutions applicable to a number of west and central African nations, including Niger. The CCJA is one of the implementing institutions created by the OHADA Treaty.

Amy Berman Jackson. *Africard Co., Ltd. v. Republic of Niger*, No. CV 16-00196 (ABJ), 2016 WL 5396666, at *1 (D.D.C. Sept. 27, 2016).

On February 5, 2016, Africard caused the Clerk of Court for the District of Columbia to serve Niger with copies of Africard's pending motion, in accordance with the FSIA's service requirements. *Africard*, 2016 WL 5396666, at *4, During April 2016 Africard's counsel received email and telephone communications from individuals purporting to represent Niger, including a document appearing to "contain legal arguments in opposition to the petition to confirm the arbitral award." *Id.* The court concluded in a subsequent opinion that such communications indicated "that Niger is aware of the pendency of this suit." *Id.*

Niger failed, however, to appear before the court in the District of Columbia. Consequently, Africard moved for default judgment on May 13, 2016, and served a copy of the motion on Niger. *Id.* at *1. Niger again failed to "take[] any steps to defend [the] action or respond to the motion for default judgment." *Id.* at *5.

On July 30, 2016, while Niger's motion for a default judgment was pending, Africard and Niger entered into a "Partial Settlement Agreement" under which Niger would make a payment to Africard in the amount of $3,685,440. *See* McCormack Decl., Ex. D at 1. The parties agreed in their Partial Settlement Agreement that they would continue their efforts to reach a "global settlement agreement." *Id.* at 2. Africard and Niger did not reach any such "global settlement agreement." McCormack Decl., ¶ 7.

The Partial Settlement Agreement also included a section called "Waiver of immunity from execution." *Id.* at 2. In that section, Niger "irrevocably" agreed that "it may not invoke . . . a right of immunity from execution or exemption from seizure in the context of legal

4

proceedings . . . on the basis of sovereign immunity from execution," and that this language constituted "waiver of its immunity from execution." *Id.*

On September 27, 2016, the court in the District of Columbia granted Africard's July 30 motion for a default judgment and confirmation of the CCJA's arbitral award. *Africard*, 2016 WL 5396666, at *8. In a detailed opinion, the court awarded judgment from Niger to Africard in the amount of $46,128,410.46, representing a conversion of the CCJA panel's award into U.S. dollars and the addition of interest. *Id.* Niger was served with a copy and French translation of the court's Judgment on October 5, 2016. McCormack Decl., Ex. E.

### D.    This Court's October 20, 2016 Temporary Restraining Order

On October 18, 2016, Africard registered the D.C. Judgment in the United States District Court for the Southern District of New York and moved for a temporary restraining order with respect to purported bank accounts that Africard believed were held in Niger's name in New York City. *See* McCormack Decl., Ex. F; ECF Nos. 1, 6, 8. Africard sought payment of "$42,442,970.46, plus post judgment interest," reflecting the D.C. judgment and the payment made by Niger under the Partial Settlement Agreement, which Africard filed with the Court. *See* ECF No. 9 at 1.

At that time, Africard had received information indicating that Niger maintained bank accounts with either Citibank Inc. or Citibank N.A. in the name of Niger's state-owned uranium enrichment company, Société de Patrimoine des Mines du Niger ("SOPAMIN"). *See id.* at 1. The Honorable John G. Koeltl granted Africard's motion for a temporary restraining order on October 20, 2016. After subsequent communications with Citibank regarding the apparent bank accounts, Africard moved for the Court to voluntarily dismiss the temporary restraining order, an order the Court granted on October 31, 2016. McCormack Decl., Exs. G and H.

### E. Niger's Ownership of Commercial Real Estate in New York

On December 27, 2016, a French-language African newspaper published a news article stating that Niger owned assets in various countries, including "a building located in the center of New York." Matthieu Olivier, "Niger: les vieux comptes ne font pas les bons amis" ("Niger: Old Accounts Do Not Make Good Friends"), *Jeune Afrique* (Dec. 27, 2016), *available at* http://www.jeuneafrique.com/mag/384823/societe/niger-vieux-comptes-ne-bons-amis/. McCormack Decl. Ex. I at 1.

Niger's New York property is a multi-story mansion at 5 East 80th Street, on the Upper East Side of Manhattan, near the corner of 80th Street and Central Park East. *See* NYC Parcels, "5 East 80th Street, Manhattan," http://nycparcels.com/property/1/01492/0007 (last visited Jan. 5, 2017) McCormack Decl., Ex. J at 1. Niger purchased the Property in 1977, as shown by a deed recorded with the County of New York, under the name, "The Republic of Niger." McCormack Decl., Ex. S at 2. The New York City Department of Finance has reported the fair market value of the Property as $25,802,000. McCormack Decl., Ex. J at 1. The Property is Niger's only known asset in the United States having value and subject to execution and attachment. McCormack Decl. ¶ 16.

Niger does not maintain the Property as embassy property or for any apparent diplomatic function. Niger keeps the property as a real estate investment and has used it to earn "tidy profit over the years." *David Seifman*, "As Niger starves, its government keeps $25M NYC pad," *New York Post* (Jan. 30, 2011), *available at* http://nypost.com/2011/01/30/as-niger-starves-its-government-keeps-25m-nyc-pad/#ixzz1Ccj0hptm. McCormack Decl. Ex. K at 2. In the 1990s, Niger rented the townhouse to Imelda Marcos, former first lady of the Philippines. *Id.*

In 2002, Niger began renting the Property to a company called 5 E. 80th St., LLC, a company listing an individual named Aby Rosen as its "Managing Partner." Amended and

Restated Memorandum of Lease (Sept. 22, 2002), McCormack Decl., Ex. N at 8-9. Mr. Rosen is a prominent New York City real estate developer. *Id.* "TRD Topics: Aby Rosen," *TRData*, http://therealdeal.com/new-research/topics/people/aby-rosen/ (last visited Jan. 5, 2017) (identifying Rosen as "principal and co-founder of RFR Holding, a major New York City real estate and development company"), McCormack Decl., Ex. L. As indicated by published reports, Rosen has lived in the property and has treated it as his home. *See* Lauren Elkies, "Aby Rosen," *The Real Deal*, http://therealdeal.com/closings/aby-rosen/ (last visited January 5, 2017), McCormack Decl., Ex. M, at 1 (stating that Mr. Rosen lives "in the East 80s [of New York City] in a townhouse").

A lease agreement signed as recently as April 16, 2012 lists Niger as "landlord" of the Property. First Amendment to Amended and Restated Memorandum of Lease (Apr. 16, 2012), McCormack Decl., Ex. N at 3. Recent property tax records of New York City indicate that Niger remains an active owner, having paid taxes on the property as recently as August 2016. McCormack Decl., Ex. T (final page, unnumbered).

## ARGUMENT

Africard is entitled to an order of attachment and execution under 28 U.S.C. § 1610(c), Rule 69 of the F.R.C.P., and N.Y. C.P.L.R. § 5230 authorizing Africard to seize the Property. This court has jurisdiction over this matter, and venue is proper in this District. A "reasonable period of time" has passed since Niger received notice of the judgment against it, making this period timely under the FSIA. *See* 28 U.S.C. § 1610(c). Africard's property meets the FSIA's requirements for the "commercial activity" exception that enables execution against property that otherwise might be protected by sovereign immunity.

In addition to an order of attachment and execution, Africard requests a temporary restraining order and preliminary injunction. Injunctive relief is needed to prevent Niger from encumbering or transferring the Property or removing funds associated with it, preventing Africard from executing its judgment against Niger (in which it is likely to succeed). The potential harms to Africard are considerable, and a balancing of the equities favors the grant of injunctive relief.

## I.     JURISDICTION AND VENUE ARE PROPER

This Court has subject matter jurisdiction in this proceeding pursuant to 28 U.S.C. § 1330(a), which provides the federal courts with original jurisdiction with respect to "any claim for relief *in personam* with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a); *see also RCA Corp. v. Tucker*, 696 F. Supp. 845, 850 (E.D.N.Y. 1988) ("[a]s to subject matter jurisdiction, the authorities are unanimous that a federal court maintains ancillary jurisdiction to enforce its own judgments, and that, under Rule 69, Fed. R. Civ. P., no independent jurisdictional basis is necessary to commence an enforcement proceeding against a garnishee not a party to the original suit."). As discussed below, Niger is not entitled to sovereign immunity. 28 U.S.C. § 1610, *et seq.* (providing exceptions to immunity from execution).

This Court has general personal jurisdiction over all entities and individuals who would be subject to this action, which concerns a real property in this district and the money flowing to and from that property, including any rent proceeds or other moneys in Niger's ownership, possession, or control that are related to the Property. The Republic of Niger, which owns the Property and leases it commercially, is subject to personal jurisdiction under both N.Y. C.P.L.R. § 302(a), for "transact[ing] . . . business within the state or contracts anywhere to supply goods

or services in the state," and N.Y. C.P.L.R. § 302(a)(4), for "own[ing], us[ing], or possess[ing] any real property situated within the state."

Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the property at issue lies within this district.

## II. AN ORDER AUTHORIZING ATTACHMENT AND EXECUTION AS TO NIGER'S PROPERTY AND RELATED PROCEEDS SHOULD BE GRANTED

### A. Niger Was Properly Served with Notice of the D.C. Judgment

Niger has been properly served with notice of the D.C. Judgment against it, and Africard's motion has been filed a reasonable time after such notice. The FSIA requires that a copy of any default judgment entered against a foreign state "shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section." 28 U.S.C. § 1608(e). Section 1608(a) provides that service is proper if the court of the clerk mails a copy of the judgment, together with a translation, to the head of the ministry of foreign affairs of the foreign state concerned "by any form of mail requiring a signed receipt." 28 U.S.C. § 1608(a)(3).

Here, the clerk of court in the District of Columbia delivered the default judgment to the head of the Ministry of Foreign Affairs by express mail, generating a signed return-receipt. McCormack Decl. Exs. Q and E. Such service complied with Section 1608(a)(3), and Niger received proper notice of the default judgment.

### B. A Reasonable Period of Time Has Passed Between Service of Judgment and the Present Motion

The FSIA also provides that a federal court may not issue an order of "attachment or execution" until after "a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." 28 U.S.C. § 1610(c). Courts have found that a "reasonable period of time" requirement under the FSIA ranges from three months to as little as five weeks. *See Baker v. Socialist People's Libyan Arab*

9

*Jamahirya*, 810 F. Supp. 2d 90, 101 (D.D.C. 2011) (90 days was a reasonable period of time);

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* No. H–01—0634, 2002 WL 32107929 at *2 (S.D. Tex. Jan. 25, 2002) (50 days was reasonable);

*Gadsby & Hannah v. Socialist Republic of Romania,* 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (two months was reasonable).

The D.C. District Court entered its default judgment, confirming the CCJA's award in favor of Africard, on September 27, 2016. *Africard*, 2016 WL 5396666, at *1. The clerk of the court sent the notice of judgment by express mail to the head of the Ministry of Foreign Affairs of Niger, which received the package and signed for it on October 5, 2016. McCormack Decl., Ex. E. More than three months have passed since the default judgment against Niger was entered and Niger received notice of it. This is well within the range of time that courts have found to be a "reasonable period of time" under Section 1610(c); Africard's application is timely.

### C. Niger Waived the "Reasonable Time" Requirement under the FSIA

Even if a "reasonable period of time" under 28 U.S.C. § 1610(c) had not elapsed, Niger has waived any "reasonable period" requirement under 28 U.S.C. § 1610(d). Section 1610(d) provides that:

> (d) The property of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment . . . prior to the elapse of the period of time provided in subsection (c) of this section, if—
>
> (1) the foreign state has explicitly waived its immunity from attachment prior to judgment, . . . and
>
> (2) the purpose of the attachment is to secure satisfaction of a judgment . . . and not to obtain jurisdiction.

Both requirements of Section 1610(d)(1) and (2) are met here.  First, Niger "explicitly waived its immunity from attachment."  *Id.*  In the Partial Settlement Agreement, under a section titled "Waiver of immunity from execution," Niger agreed to the following:

> REPUBLIC OF NIGER irrevocably accepts that starting on this day, it may not invoke, for itself or for its goods, property and assets, wherever they may be, . . . a right of immunity from execution or exemption from seizure in the context of legal proceedings (which may include, without being limited to, judicial proceedings; . . . and obtaining a judgment, execution of a judgment or any other execution), on the basis of sovereign immunity from execution, for any act deriving directly or indirectly from its obligations under the present Agreement [with Africard] and under the [CCJA Arbitral] Award . . . .
>
> As required, it is specified that this waiver constitutes waiver of its immunity from execution . . . .

Partial Settlement Agreement, Article 3 McCormack Decl. Ex. C at 2.

It is also clear that the purpose of the attachment sought by Africard is "to secure satisfaction of a judgment . . . and not to obtain jurisdiction."  28 U.S.C. § 1610(d).  Accordingly, Niger waived any "reasonable period of time" objection under Section 1610(c).

### D.    The Property Is Commercial Property and Is Not Immune from Attachment  or  Execution

Sovereign immunity under the FSIA does not protect Niger's Property at 5 East 80th Street from attachment and execution because it is used for commercial activity.  The FSIA provides a two-part test to determine when such property is not shielded by sovereign immunity.  First, the property must be "used for a commercial activity in the United States."  28 U.S.C. § 1610(a).  Second, the movant must satisfy any one of seven additional circumstances under 28 U.S.C. § 1610(a)(1) through (7).  Both requirements are met here.

### 1.    The Property Is Used for Commercial Activity

The Property – rented by Niger to a Delaware company for use as the private home of an American real-estate developer – is used for commercial activity.  The FSIA  defines

"commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). This standard is met "when a foreign government acts . . . in the manner of a private player within" a market. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). By contrast, an act is "public and 'noncommercial' if it is one which only a sovereign state can perform." *Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1024 (9th Cir. 1987) (quoting citation omitted).

To determine whether conduct is "commercial activity," a court looks to "the nature of the course of conduct or particular transaction or act, rather than . . . to its purpose." 28 U.S.C. § 1603(d). "[T]he issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Weltover*, 504 U.S. at 614. (emphasis in original; quoting Black's Law Dictionary 270 (6th ed. 1990)).

It is well established that a foreign state's renting of property to private parties is commercial activity under 28 U.S.C. § 1603(d). In *Board of Managers of OTIC Professional Condominium v. Democratic Republic of Somalia*, 2009 U.S. Dist. LEXIS 68333, at *4 (S.D.N.Y. July 20, 2009), the Republic of Somalia rented out a condominium unit to generate income. The court found the commercial activity exception applied because "[t]hat is the type of commercial activity in the United States that a private party would normally conduct." *Id.*; *see also Ford Motor Co. v. Russian Fed'n*, No. 09 CIV. 1646 (JGK), 2010 WL 2010867, at *3 (S.D.N.Y. May 18, 2010) (observing that "'leasing of property' is considered a commercial activity" under the FSIA) (quoting H.R. Rep. No. 94–1487, at 16); *see also Joseph*, 830 F.2d at 1024 (Nigeria's renting property for consulate, although not for profit, was commercial activity because it "entered the marketplace as a commercial actor").

The same reasoning applies here. Niger rents the Property to 5 E. 80th St. LLC, a Delaware company controlled by Aby Rosen, a New York real-estate developer. When Niger rented the Property, it was acting not as a sovereign but as a private player in the New York City real estate market. Niger's motivation for renting the Property, the amount of profit or loss Niger has made on the transaction, or the past uses for which it might have used the Property are irrelevant. Because the leasing relationship between Niger and its private tenant is "commercial in nature," Niger is "properly subject to suit in the United States under the FSIA commercial activity exception." *Ford Motor Co.*, 2010 WL 2010867, at *4.

## 2. Additional Circumstances under § 1610(a) Are Present

The Property is not only used for commercial activity, it also meets two additional circumstances enumerated in 21 U.S.C. § 1610(a), as set forth below. Either of these circumstances, combined with the "commercial activity" element, removes the Property from any possible protection of Niger's sovereign immunity.

### a. Niger Waived Immunity From Attachment

Under the FSIA, a property "used for a commercial activity in the United States" is subject to attachment and execution if an additional condition applies, including, *inter alia*, that "the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication," regardless of whether the foreign state subsequently purports to withdraw such a waiver. 28 U.S.C. § 1610(a)(1). The Second Circuit has held that this "explicit" provision applies to even broadly phrased waivers, provided their language is "clear and unambiguous." *Libra Bank Ltd. v. Banco Nacional de Costa Rica, S. A.*, 676 F.2d 47, 49 (2d Cir. 1982) (finding that a waiver concerning "all immunities" was explicit and enforceable).

Niger's waiver of immunity was explicit, as shown in the "Waiver of immunity from execution" section of the Partial Settlement Agreement between Niger and Africard. *Supra* at

10-11. In that provision, Niger "irrevocably" agreed that "it may not invoke . . . a right of immunity from execution or exemption from seizure in the context of legal proceedings . . . on the basis of sovereign immunity from execution," and that this language constituted "waiver of its immunity from execution." McCormack Decl., Ex. C at 2. This language is "clear and unambiguous" – more so than the language found to be enforceable in *Libra Bank*, 676 F.2d at 49 – and is therefore "explicit[]" under 28 U.S.C. § 1610(a)(1). Because Niger waived immunity, its commercial property is subject to execution and attachment under the FSIA.

> **b.** The Execution or Attachment Would Satisfy an Arbitral Award

In addition, the second requirement of 28 U.S.C. § 1610(a) is also met because the execution sought by Africard is for the purpose of executing an arbitral award. Under the FSIA, property used for commercial activity is not immune if "the judgment is based on an order confirming an arbitral award rendered against the foreign state, provided that attachment in aid of execution, or execution, would not be." 28 U.S.C. § 1610(a)(6).

Here, the attachment and execution sought by Africard is "based on an order confirming an arbitral award": Judge Berman Jackson's September 27, 2016 decision confirming the December 6, 2014 Final Award from the CCJA. *See generally Africard*, 2016 WL 5396666. An order of attachment and execution on the Property would not be "inconsistent with any provision in the arbitral agreement" under 28 U.S.C. § 1610(a)(6). The arbitration agreement between Niger and Africard consists of four paragraphs in the Concession Agreement between the parties, not one of which prohibits this Court from issuing an attachment and execution order as to Niger's commercial property in the U.S. *See* McCormack Decl., Ex. D.

### III. THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PRESERVE THE STATUS QUO OF THE PROPERTY

Africard respectfully requests that this court grant a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the F.R.C.P. to preserve the status quo of the assets at issue – and to address the imminent risk that Niger or its agents may liquidate, encumber, change the status or alter the Property in order to prevent Africard from executing on the Property to satisfy its judgment.

To obtain a preliminary injunction, a movant "must establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–690 (2008)) (numeration in brackets added). The same requirements apply to an application for a temporary restraining order. *Dama S.P.A. v. Does*, No. 15-CV-4528 (VM), 2015 WL 10846737, at *1 (S.D.N.Y. June 15, 2015). In addition, an applicant for a temporary restraining order must show, *inter alia*, that "irreparable injury will be caused absent prompt judicial intervention in circumstances where the adversary cannot be contacted." *Id.* (quoting *Little Tor Auto Ctr. v. Exxon Co., USA,* 822 F. Supp. 141, 143 (S.D.N.Y.1993)). All of these requirements for injunctive relief are met here.

### A.  Africard is Likely to Succeed on the Merits of Its Motion

For the reasons set forth above in sections I and II, Africard's application pursuant to 28 U.S.C. § 1610(a) and (c) and Rule 69 of the F.R.C.P. providing for the attachment and execution of the Property is likely to succeed.

Africard has obtained (1) an arbitral decision from a CCJA panel finding Niger liable to Africard, after a contested arbitration on the merits, and (2) a judgment from the U.S. District

Court for the District of Columbia, expressed in a formal, detailed opinion, confirming the CCJA's award of damages. *See generally Africard*, 2016 WL 5396666. Africard now seeks to execute that judgment by seizing title to property in this District owned by Niger – property that is used for commercial activity pursuant to 28 U.S.C. § 1610(a) and is thus not shielded by any sovereign immunity. Africard provided Niger with reasonable, timely notice of the judgement, as required by 28 U.S.C. § 1610(c). Considering all these facts in Africard's favor, its ultimate motion for relief is highly likely to succeed.

### B.  Africard Will Suffer Irreparable Harm if the Property Is Encumbered or Sold

Injunctive relief is appropriate when a failure to issue such relief could undermine a court's ability to grant effective relief on the merits of the claim. *See In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir. 1985); *Smith v. Fed. Reserve Bank of N.Y.*, 280 F. Supp. 2d 314, 316 (S.D.N.Y. 2003), *aff'd*, 75 F. App'x 860 (2d Cir. 2003), and *aff'd sub nom. Smith ex rel. Estate of Smith v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264 (2d Cir. 2003) (plaintiffs faced likelihood of irreparable harm where plaintiffs' sole source available to satisfy judgment, funds from an account, were at risk of being disbursed).

Niger's past conduct shows a history of ignoring judgments, failing to appear in court, and ignoring court orders. Indeed, Niger's disregard for the court in the District of Columbia has led to Africard's judgment and its current motion to the Court. Similarly, in 2015, in *Export-Import Bank of China v. Republique du Niger*, Magistrate Judge Sarah Netburn ordered sanctions against Niger for its failure to respond to court orders. Memorandum & Order Imposing Sanctions, *Export-Import Bank of China v. Republique du Niger*, No. 1:97-cv-03090-LAK-SN, at *8 (S.D.N.Y. Mar. 19, 2015) McCormack Decl., Ex. R. The court found, "[T]he character and magnitude of the financial harm threatened [by Niger's conduct] are momentous. Niger has failed to satisfy, or even attempt to satisfy in any part, the order of judgment, entered sixteen

16

years ago. What began as a roughly $75 million order of judgment in 1998 has now accrued with interest to over $180 million . . . ." *Id.* at *7.

Niger is highly likely to take actions to prevent Africard from finally enforcing its judgment and seizing the Property. Niger could seek to sell the Property, mortgage the Property for credit, or attempt a novel modification or assignment of its current commercial lease that could complicate or obstruct Africard's attempts to seize the property. Given the absence of other known assets of Niger in the United States, such a move would effectively make Niger judgment-proof – which is significant grounds for showing a likelihood of irreparable harm. *See Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, No. 93 Civ. 8100 (JFK), 1994 U.S. Dist. Lexis 15494 at *6 (S.D.N.Y. Oct. 28, 1994) (preliminary relief granted where risk existed that judgment debtor "will become judgment proof"); *Firemen's Ins. Co. v. Keating* 753 F. Supp. 1146, 1153 (S.D.N.Y 1990) (injunctive relief proper where non-movant could remove assets).

If Africard were to communicate with Niger in an attempt to seize the Property, Niger would likely take action to obstruct such a seizure immediately, calling for "prompt judicial intervention" in the form of a temporary restraining order. *See Dama S.P.A.*, 2015 WL 10846737, at *1. Unless its actions are hindered by immediate injunctive relief, Niger would have the ability to leave Africard with no real remedy in the United States and render the court's judgment against Niger a nullity.

### C.    The Balance of Equities Favors Issuing Injunctive Relief

The balance of equities favors granting Africard's request for injunctive relief. The purpose of such relief is to preserve the status quo between the parties prior to adjudication on the merits. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits."). As discussed above, if Niger's action concerning the

Property is not restrained, the Property could be sold, transferred, encumbered or its status changed at any minute, leaving Africard with little to no remedy. There is little to no prejudice, by contrast, to Niger. The injunctive relief requested by Africard would merely preserve the existing status quo, doing nothing to strip Niger of its title in the property it has owned since 1977 or affecting its current lease arrangement with its tenant since 2002. Because the potential harm to Africard absent injunctive relief is far greater than any minor inconvenience that such relief would cause Niger, the balance of the equities tips strongly toward granting injunctive relief.

### D.     Granting Injunctive Relief Promotes the Public Interest

Granting injunctive relief will promote the public interest. By restraining the assets, the Court will protect the role of the District Court for the District of Columbia, and of United States District Courts generally, as adjudicators of disputes. By contrast, the public interest would be ill-served if Niger were to take advantage of the Court's deliberative process by transferring the Property to prevent Africard from enforcing its D.C. Judgment and any possible order that this Court might issue.

### E.     Security

Although Africard should not need to file any security, it is prepared to post security as the Court sees fit pursuant to F.R.C.P. 65.

<strong>CONCLUSION</strong>

For the reasons stated above, Africard respectfully requests that this Court issue an order to show cause providing for (1) a temporary restraining order enjoining respondent Niger, during the pendency of this application, from (a) selling, transferring, mortgaging, or in any manner encumbering the Property; (b) entering into any new lease agreements concerning the Property; (c) assigning, terminating, or otherwise modifying in any way any existing lease agreements or

18

arrangements concerning the Property; or (d) transferring, concealing, or removing from this District any rent proceeds or other moneys in respondent Niger's ownership, possession, or control that are related to the Property in any way; (2) a preliminary injunction enjoining Niger from taking those same actions with regard to the Property over a longer period of time; and (3) an order pursuant to 28 U.S.C. § 1610(a) and (c), Rule 69 of the F.R.C.P., and N.Y. C.P.L.R. § 5230 and providing for the attachment and execution of judgment upon the Property, and upon any rental proceeds or other moneys associated with the Property in Niger's ownership, possession, or control, for the benefit of petitioner Africard.

Dated: January 6, 2017
New York, New York

CHADBOURNE & PARKE LLP

By: _Thomas J. McCormack_

Thomas J. McCormack
Benjamin D. Bleiberg
John P. Figura
1301 Avenue of the Americas
New York, NY 10019
(212) 408-5100 (telephone)
(212) 541-5369 (facsimile)
tmccormack@chadbourne.com
bbleiberg@chadbourne.com
jfigura@chadbourne.com

*Attorneys for Petitioner-Judgment Creditor*